```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Tonya Morrison,                     :

       Plaintiff,             :

   v.                                :    Case No. 2:06-cv-0283

Muskingum County Sheriff            :    JUDGE FROST
Robert J. Stephenson, et al.,
                                    :

       Defendants.

<u>ORDER</u>

Following the close of discovery in this case, which occurred on July 6, 2007, three motions relating to discovery have been filed. One of them, plaintiff's Motion to Enforce Discovery Order of the Court (#125), appears to have been satisfactorily resolved, and the Court will therefore deny the motion on that basis. Concluding that the other two discovery motions, both filed by defendants, lack merit, the Court will also deny both of those motions (#s 142 and 143).

I.

On November 1, 2007, defendants filed a motion to compel discovery. The motion sought relief with respect to five different discovery requests. One of those, a request for deposition summaries provided to one of plaintiff's experts, Dr. Lyman, has been mooted by the production of those summaries. The Court will therefore address the other four matters in this section of this order.

First, defendants have asked the Court to compel plaintiff Tonya Morrison to sign a release in order that they may obtain the file of an investigation conducted by the Federal Bureau of Investigation. Apparently, after the event at issue in this

case, Ms. Morrison made a complaint to the FBI and that agency conducted an investigation.  The FBI will not release the results of that investigation to the defendants without Ms. Morrison's authorization.

Ms. Morrison argues that the request for this release is untimely because it came after the close of discovery.  Defendants' only response to this assertion is that they requested the information from the FBI under the Freedom of Information Act during the discovery period in this case.  Although they may have done so, that request does not constitute discovery.  An FOIA request is made outside the confines of the discovery procedures set forth in Fed.R.Civ.P. 26-37 and 45.  Because defendants neither made a request for this information directly to Ms. Morrison during the discovery period nor demonstrated why they did not, the Court concludes that their motion to compel with respect to this issue is untimely.

Next, defendants have requested leave to conduct a second deposition of one of Ms. Morrison's treating health care providers, Dr. Moses, and a second deposition of Ms. Morrison.  The former deposition is necessary, according to defendants, because Dr. Moses saw Ms. Morrison at least one more time after his November, 2006 deposition, and also wrote at least one letter concerning the case after that time.  Defendants propose to cover a variety of subjects during Ms. Morrison's second deposition which were not covered at her first deposition.  They acknowledge, however, that the only matter about which the first deposition was left open - Ms. Morrison's lost wage claim - has been resolved through the written withdrawal of that claim.  For the following reasons, the Court finds that good cause has not been shown for a second deposition of either deponent.

Although depositions are ordinarily noticed and taken without the involvement of the Court, Fed.R.Civ.P. 30(a) sets

forth several circumstances under which leave of court is required in order to take a deposition. One of those circumstances, set forth in Rule 30(a)(2)(B), is when "the person to be examined already has been deposed in the case...." Although the Rule requires a party to seek leave of court under those circumstances, it also provides that such leave "shall be granted to the extent consistent with the principles stated in Rule 26(b)(2)...."

This discovery rule, like other discovery rules requiring the parties to apply for leave of court, provides the Court with considerable discretion to make a determination which is fair and equitable under all the relevant circumstances. See generally Innomed Labs v. Alza Corp., 211 F.R.D. 237, 239 (S.D.N.Y.2002). Of course, that discretion is not unfettered. The principles guiding the Court's discretion are those set forth in Rule 26(b)(2), which include whether the second deposition of the witness would be unnecessarily cumulative, whether the party requesting the deposition has had other opportunities to obtain the same information, and whether the burden of a second deposition outweighs its potential benefit. See Collins v. International Dairy Queen, 189 F.R.D. 496 (M.D.Ga.1999); Hurley v. JARC Builders, 164 F.R.D. 39 (E.D.Pa.1995).

The courts have dealt with a number of repetitive scenarios in applying these principles. Typically, if, after a witness is deposed, new information comes to light relating to the subject of that deposition, new parties are added to the case, new allegations are made in pleadings, or new documents are produced, the witness may be re-deposed with respect to these new developments. See Keck v. Union Bank of Switzerland, 1997 WL 411931 (S.D.N.Y. July 22, 1997). A re-deposition may also be ordered if the examining party was inhibited from conducting a full examination as a result of obstructive conduct at the first deposition. Id. However, the Court may deny leave to conduct a second deposition of the witness even if relevant documents are

3

produced subsequent to the deposition if the party taking the deposition either failed to request those documents in a timely fashion or chose to conduct the deposition prior to the completion of document discovery. See Lowery v. Noble Drilling Corp., 1997 WL 675328 (E.D.La. October 29, 1997).

     Turning first to Dr. Moses, it appears that his trial deposition was taken more than a year ago because he was scheduled to be out of the country for a substantial period of time.  Defendants took a discovery deposition of him immediately prior to the trial deposition, and then had the opportunity to examine him again during the trial deposition itself.  They do not argue any inadequacy in the prior proceedings, but argue that because of subsequent developments they are entitled to conduct a brief re-deposition.  Those subsequent developments include the production of his complete correspondence file after his first deposition, Dr. Moses' one additional examination of Ms. Morrison after the deposition, and a letter written in 2007 expressing certain views about diagnoses which had been made by other treating health care sources.

     With respect to Dr. Moses' correspondence file, Ms. Morrison asserts, without contradiction, that his entire correspondence file as it existed at that time was made available to counsel for the defendants at the November, 2006 deposition.  Thus, two of the proffered bases for conducting a second deposition can be collapsed into a single argument, namely that because Dr. Moses has produced additional correspondence after his first deposition, including his August 18, 2007 letter, defendants should be permitted to conduct an additional deposition.  In fact, because the only other significant event which appears to have occurred after the original deposition is his one additional visit with Ms. Morrison, all three arguments can be distilled into the proposition that if an expert is deposed early in a case

4

and performs any additional work after that time (whether generating additional correspondence, evaluating the plaintiff, or both), a second deposition is warranted.

The Court will not adopt a *per se* rule that once an expert is deposed, he or she can perform no additional work, conduct no additional examinations of a party, or author additional correspondence without subjecting himself or herself to a second deposition.  Such matters occur routinely in litigation.  Rather, in order to justify the taking of a deposition, the party making the request should demonstrate not only that additional work has been done, but that he or she has been unable, either through the first deposition or otherwise, to address any additional work done or conclusions reached without conducting a second deposition of the same witness.

The defendants simply have not met their burden here. Again, Ms. Morrison asserts, without contradiction, that Dr. Moses saw her only once after his original deposition, and that the results of his examination (as well as the progress of her claimed psychological condition) have been made available to defendants through depositions of others, including Ms. Willet, who works with Dr. Moses.  Further, the additional session with Ms. Morrison did not produce any new or different results. Defendants have the correspondence generated by Dr. Moses and are free to use it either in examining him or examining other witnesses.  It does not appear to the Court, however, that Dr. Moses expressed any new or different opinions in the correspondence which would justify requiring him to sit for another deposition.  Defendants should be able adequately to conduct any cross-examination of Dr. Moses, should he appear live at trial, as a result of their possession of this correspondence and their general knowledge base of the treatment received by Ms. Morrison.

The Court makes the following observation, however. Should Dr. Moses not be offered as a live witness at trial, and should defendants wish to supplement their trial cross-examination of Dr. Moses as a result of recent developments, they would be entitled to do so. Such an examination would not constitute a second deposition, but rather simply an extension of cross-examination justified by developments between the date of the original deposition and the date of the trial. The rationale for this ruling is straightforward. Any witness previously deposed would be subject to a cross-examination at trial that includes matters arising after the deposition. The fact that Dr. Moses' trial deposition occurred very early in this case should not deprive defendants of the right to include subsequent matters in their cross-examination. The parties should confer to determine whether Dr. Moses will likely testify live at trial or whether his trial testimony, either on direct or on cross-examination, will need to be updated through additional videotape depositions.

With respect to Ms. Morrison's deposition, the parties expressly agreed at the first session of her deposition that she could be deposed again on the subject of her lost wage claim. When defendants filed their motion, that claim was still open. However, Ms. Morrison's counsel has since written a letter formally withdrawing the claim. As a result, that basis for taking a second deposition of Ms. Morrison is no longer viable.

Defendants also argue that because Ms. Morrison refused to answer certain questions at her initial deposition about voice recordings on grounds of Fifth Amendment privilege, they should be entitled to redepose her on that issue. After the deposition, they submitted requests for admission concerning these voice recordings. Ms. Morrison refused to admit that it was her voice on the recording, but she did not assert any privilege in response to the request. As a result, the defendants conclude

6

that the privilege has now been waived and they are entitled to answers to the questions previously posed.  Finally, they argue that because Ms. Morrison has undergone several additional examinations by health care professionals and has added two new claims to the case, she should be required to sit for a deposition with respect to these matters.

First, defendants appear never to have requested a second deposition of Ms. Morrison during the discovery period.  They could have moved to compel her to answer the questions to which she responded by invoking the Fifth Amendment immediately after her deposition was taken, but they did not.  They chose to serve their written discovery concerning this matter in such a way that the answers were not provided until July 5, 2007, one day before the close of discovery.  Consequently, the Court concludes that they have shown neither good cause for extending the discovery period for a second deposition on this issue nor good cause for the second deposition itself, independent of whether their request came timely.

Defendants also argue that they should be permitted to depose Ms. Morrison about her two additional appointments with Dr. Reardon, one of her health care providers.  Again, it is typical in litigation that an injured party will continue to receive treatment for a medical condition after his or her deposition has been taken.  Consequently, the Court should permit a second deposition concerning a medical condition only if some new or additional condition develops, or some undisclosed treatment or opinions occur, which were not covered adequately either by the first deposition of the injured party or by the subsequent depositions or productions of medical records from her health care providers.  Ms. Morrison notes that the defendants have been able to depose the health care provider who saw her and have received records of those additional appointments.  Under

those circumstances, and because there is no evidence that any new or additional medical conditions have developed since the date of Ms. Morrison's first deposition, good cause does not exist to redepose her with respect to her medical condition.

Finally, defendants have argued that they are entitled to a second deposition in order to ask Ms. Morrison questions about her new claims. However, as Ms. Morrison correctly points out in her opposing memorandum, these new claims are not ones about which Ms. Morrison is likely to have any knowledge. They relate exclusively to the handling and disposition of evidence while it was under the defendants' control. In fact, one of the reasons the Court permitted these claims to be added to the case at a late date is that little if any discovery would be required in order to develop the claims, and that the defendants were likely in possession of all of the information relevant to them. Thus, the addition of these claims does not provide a basis for ordering a second deposition of Ms. Morrison.

The only other item requested in the motion to compel is that Ms. Morrison be directed to supplement her discovery responses with information regarding her arrest on new criminal charges in September, 2007. Defendants previously posed an interrogatory requesting Ms. Morrison to disclose any information concerning whether she had been arrested for a criminal offense, and if so, the nature of the offense, the court which disposed of the case, the case number, and the date of disposition. However, defendants have attached to their motion information indicating that they are aware of all of these matters concerning the new arrest. Further, Ms. Morrison asserts that she would object to the relevancy of any information about an arrest, contending that information about an arrest would not be relevant if the sole purpose of using such information would be for impeachment purposes. Consequently, if she were required to supplement her

8

discovery responses, she would do so by objecting.

The Court is not persuaded that this information is entirely irrelevant. Information about new criminal behavior might lead, in turn, to information about Ms. Morrison's ongoing psychological condition, which is an issue in this case. On the other hand, it appears that the defendants already have in their possession the same information which Ms. Morrison would supply were she required to answer the interrogatory. Under those circumstances, there would appear to be no benefit to the defendants from any supplementation. The parties should, however, continue to be in communication over this issue in order to make sure that, once the criminal case is disposed of in some fashion, the defendants have access to all the relevant information concerning that disposition.

## II.

The defendants also filed a motion to conduct additional discovery on November 2, 2007. The motion raises an issue which has been discussed with the parties during conferences with the Court. The issue has arisen because the defendants wish to conduct approximately nine additional depositions after the discovery cutoff. The parties disagree about whether they had previously reached an agreement that this would happen.

Fed.R.Civ.P. 29 permits the parties to enter into written stipulations concerning, among other things, the taking of depositions "at any time or place...." The rule does provide, however, that the parties need approval of the Court for certain types of discovery agreements which would affect court-ordered deadlines for the completion of discovery. Additionally, Fed.R.Civ.P. 16(b) provides that any dates established in a pretrial order may be altered only for good cause shown and by order of the court. When the parties have agreed to an extension of the discovery cutoff in order to permit additional discovery

9

to occur, the Court may choose to disapprove that agreement. This case does not directly present that issue, however, but the subsidiary issue of whether the parties entered into an effective stipulation with respect to conducting discovery after July 6, 2007.

From the information submitted to the Court, the Court cannot find that such an agreement existed.  The parties had an oral conversation about conducting discovery after July 6, 2007. The attorneys who participated in that conversation have submitted diametrically-opposed affidavits as to its content. Defendants' counsel asserts that an agreement was reached.  On the other hand, Ms. Morrison's counsel asserts that the agreement was only that defendants would identify the names of the witnesses they wish to depose after that date, and the parties would then discuss whether they could conduct such discovery by agreement.  Ultimately, Ms. Morrison's counsel chose not to agree to nine of the ten depositions proposed.  The correspondence which the parties have provided to the court does not indicate, by its terms, a meeting of the minds with respect to this issue, and there is no formal written stipulation of any agreement. Consequently, the Court cannot find that the parties reached an agreement concerning these depositions.

Further, the Court cannot conclude that good cause has been shown for an extension of the discovery cutoff with respect to these depositions.  It appears that the conversation in question occurred on or about July 3, 2007, only three days before the close of discovery.  There has been no showing why these depositions were not noticed during the discovery period. Defendants' counsel represents that, had he believed that no agreement had been reached concerning extending the discovery cutoff in order to take these depositions, he would have filed a timely motion for an extension.  However, that motion would have

10

come very late in the discovery period (sometime between July 3 and July 6), and absent a good reason why this discovery could not have been conducted with due diligence prior to July 6, 2007, the Court would have been unlikely to grant any such motion. That is true regardless of whether Ms. Morrison would have been prejudiced by the taking of these additional depositions. Demonstrating the inability to meet a court-ordered deadline despite the exercise of due diligence is a pre-requisite to granting relief from a deadline established in a pretrial order. See e.g., Rouse v. Farmers State Bank, 866 F.Supp. 1191, 1199 (N.D. Iowa 1994); see also Deghand v. Wal-Mart Stores, 904 F.Supp. 1218, 1221 (D. Kan. 1995). For all of these reasons, the Court concludes that there is no basis for permitting defendants to take these additional depositions well beyond the discovery cutoff date.

### III.

Based upon the foregoing, all three pending discovery-related motions (#s 125, 142 and 143) are denied.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or

District Judge.   S.D. Ohio L.R. 72.4.


                                             /s/ Terence P. Kemp
                                             United States Magistrate Judge