**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

TONYA MORRISON,

        Plaintiff,                              Case No. 2:06-cv-283
                                                     JUDGE GREGORY L. FROST
    v.                                    Magistrate Judge Terence P. Kemp

ROBERT J. STEPHENSON, MUSKINGUM
COUNTY SHERIFF, et al.,

        Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' Motion *in Limine* Regarding Evidence of Other Taser Incidents (Doc. #162), Defendants' Motion *in Limine* Regarding Plaintiff's Witness Testimony (Doc. #163), Defendants' Motion *in Limine* Regarding Testimony of Michael Lyman (Doc. #164), Defendants' Motion *in Limine* Regarding Testimony of Edward Pollyea, M.D. (Doc. # 165), Defendants' Motion *in Limine* Regarding Evidence of More than One Taser Device Being Applied to Plaintiff (Doc. #166) and Defendants' Motion *in Limine* Regarding Plaintiff's Treating Physicians (Doc. #167).

### I. Applicable Standards

**A. Motion *in limine* standard**

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize the Court to rule on an evidentiary motion *in limine*, the United States Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion *in limine* is to allow the Court to rule on issues

pertaining to evidence in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial.  See *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

Courts, however, are generally reluctant to grant broad exclusions of evidence *in limine*, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp.2d 1385, 1388 (D. Kan 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  A court should not make a ruling *in limine* unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible.  *Ind. Ins. Co.*, 326 F. Supp. 2d at 846; *Koch*, 2 F. Supp. 2d at 1388.

### B.  The *Daubert* Standard and Expert Witnesses

Several of the pending motions *in limine* seek to prevent expert opinion testimony based on Federal Rule of Evidence 702 and the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  This Court has explained in prior decisions that the United States Supreme Court held in *Daubert* that the Federal Rules of Evidence had superseded the "general acceptance" test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and that Rule 702 requires that trial judges perform a "gate-keeping role" when considering the admissibility of expert testimony.  *Daubert,* 509 U.S. at 597.  The relevant Federal Rule of Evidence is Rule 702, which  provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Further, the Supreme Court has made clear that Rule 702 applies not only to scientific testimony but also to other types of expert testimony based on technical or other specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 149 (1999).

The trial court's gate-keeping role is two-fold. First, the Court must determine whether the proffered testimony is reliable. *See Daubert*, 509 U.S. at 590. The reliability assessment focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* The expert's testimony must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief. *Id.* Thus, the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3rd Cir. 1994).

The Supreme Court in *Daubert* set out four non-exclusive factors to aid in the determination of whether an expert's methodology is reliable. They are:

> (1) whether the theory or technique has been tested;(2) whether the theory or technique has been subjected to peer review and publication;(3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and(4) whether the theory or method has been generally accepted by the scientific community.

*Daubert*, 509 U.S. at 593-94. *See also Deal v. Hamilton County Bd. of Ed.*, 392 F.3d 840, 851 (6th Cir. 2004). The Court in *Kumho Tire* stressed that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial judge may consider one or more of the *Daubert* factors when doing so will help determine that expert's reliability. *Kumho Tire*, 526 U.S. at 150. The test of reliability is a "flexible" one, however, and the four *Daubert* factors do not constitute a "definitive checklist or test" but must be tailored to the facts of the particular

3

case. *Id.* (quoting *Daubert,* 509 U.S. at 593); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 470 (6th Cir. 2004). The particular factors will depend upon the unique circumstances of the expert testimony involved. *See Kumho Tire Co.*, 526 U.S. at 151-52.

       The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant to the facts at issue. *See Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. *See United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993). Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant. The United States Supreme Court and courts of appeals have made clear that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that area of expertise or that are not founded on a reliable methodology. *See, e.g., Kumho Tire Co., Ltd.*, 526 U.S. at 154-55 (finding the proffered expert qualified as an expert in mechanical engineering, but that his methodology in analyzing a particular tire failure was not reliable); *Weisgram v. Marley Co.*, 169 F.3d 514, 518 (8th Cir. 1999) (holding that a city fire captain, although qualified as an expert on fire investigation and therefore qualified to testify as to his opinion that a fire started in the entryway and radiated to a sofa, was not qualified to testify as to his unsubstantiated theories of a malfunction that might have caused the fire); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1317-19 (11th Cir. 1999) (proposed expert testimony of pathologist not permitted upon basis of unreliable methodologies in silicon breast implant case); *Cummins v. Lyle Indus.*, 93 F.3d 362, 371 (7th Cir. 1996) (industrial engineer not permitted to render an expert opinion regarding the adequacy of warnings, the adequacy of an instruction manual, and the feasibility of alternative designs for a trim press).

The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The judge's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value. *Wellman v. Norfolk and W. Ry. Co.*, 98 F. Supp. 2d 919, 923-24 (S.D. Ohio 2000).

### C. Failure to Disclose Pursuant to Fed. R. Civ. P. 26(a)

Defendants seek to exclude witnesses from testifying for failure to comply with the mandatory disclosure requirements of Fed. R. Civ. P. 26. The Rule states that a party must provide to other parties "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(I). Rule 26(e) requires a party to supplement a disclosure if ". . . the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

This Court recognizes that Fed. R. Civ. P. 37(c)(1) "requires absolute compliance with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (citation omitted). The burden to prove harmlessness is on the party facing sanctions. *Id.*

5

**D. Expert Disclosure Requirements for Treating Physicians**

Fed. R. Civ. P. 26(a)(2)(B) requires that disclosure of experts be "accompanied by a written report — prepared and signed by the witness — if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." However, the Sixth Circuit has noted that Rule 26(a)(2)(B) only requires the furnishing of an expert report by a physician when the physician was "retained or specially employed to provide expert testimony." *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, (6th Cir. 2007) (finding especially persuasive the committee notes to Rule 26, which state in pertinent part that "[a] treating physician ... can be deposed or called to testify at trial without any requirement for a written report.").

Many courts have allowed a treating physician to testify without providing an expert report so long as the physician's testimony did not go "beyond the scope of their own diagnosis and treatment." *Id*. at 870. Nonetheless, some courts have required treating physicians to file expert reports when not doing so would be contrary to the policy underlying the Rule. *Id*. (discussing the rationale used by courts when determining whether or not an expert report should be required). Courts have used several factors in determining whether or not to require experts to file reports. *See, e.g., Mohney v. USA Hockey, Inc.*, 138 Fed.App'x. 804, 811 (6th Cir.2005) (requiring the disclosure of expert reports when a treat physician's opinion was formed in anticipation of litigation, and not during treatment); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000) (stating that Rule 26(a) serves to "allow[ ] both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case"); *Sowell v. Burlington N. & Santa Fe Ry. Co.*, No. 03-C-3923, 2004 WL 2812090, at *5 (N.D.Ill.

Dec.7, 2004) (arguing one rationale for expert reports is to decrease the costs associated with deposing an expert).

## II.  Analysis

### A.  Evidence of prior TASER incidents (Doc. # 162)

Defendants' first motion *in limine* seeks to exclude evidence regarding other TASER incidents involving the Muskingum County Sheriff's Office.  The motion to exclude also urges the court to strike references to other TASER incidents referenced in the report of Plaintiff's witness Dr. Lyman.  Defendants' argue that such evidence is irrelevant and therefore inadmissible under Fed. R. Evid. 402.  They further argue that admission of such evidence would be prejudicial under Fed. R. Evid. 403.  Plaintiff argues that such evidence is admissible under Fed. R. Evid. 404(b) for other purposes, such as proof of motive, opportunity, or intent.

Defendants are correct that evidence of other acts, generally, is not admissible.  Fed. R. Evid. 404 prohibits the use of evidence of prior acts to show conformity therewith.  Any use of prior TASER incidents in this regard is both clearly inadmissible, and prejudicial.  While Plaintiff is correct in noting that such evidence can still be admissible, she has not argued why it would be specifically relevant in this case.  Upon a showing that the evidence would be relevant in this particular case, and within the scope of 404(b), Plaintiff may be permitted to use such evidence.  Until such relevance can be shown, this Court cannot determine whether or not the probative value of such evidence would be outweighed by its prejudicial effects.  Additionally, the Court agrees with each party's assertions that evidence of other TASER incidents by those not named as Defendants in this case is irrelevant, and therefore clearly inadmissible.

The Court concludes that Plaintiff may not present evidence of other TASER incidents involving officers who are not a party to this action and may not present evidence of other

TASER incidents involving Defendants to show conformity therewith; as such evidence is clearly inadmissible. Therefore, the Court **GRANTS IN PART** Defendants' Motion *in Limine* (Doc. # 162), with the understanding that Plaintiff may still be able to present evidence of other TASER incidents involving the Defendants if she can establish that it is admissible consistent with this opinion, or if Defendants open the door to the admission of such evidence. Furthermore, anything in Dr. Lyman's report inconsistent with this opinion must be redacted prior to the report's admission into evidence.

### B. Exclusion of improperly disclosed witnesses (Doc. # 163)

Defendants seek to prevent several witnesses for Plaintiff from testifying. Defendants argue that Plaintiff has failed to meet the mandatory disclosure requirements of Fed. R. Civ. P. 26(a) and 26(e) by not identifying the subjects of information each witness could provide. Defendants also argue that several witnesses were only relevant to the Plaintiff's dismissed *Monell* claim, and therefore the testimony of such witnesses is no longer relevant. Plaintiff argues that her disclosure of witnesses was sufficient because the disclosure was identical to Defendants' disclosure. Plaintiff also argues that Defendants' having listed these witnesses in their initial and supplemental disclosures and that proves they are aware of the subject matter of the witnesses' testimonies and cannot claim surprise on that ground.

If Plaintiff did fail to make mandatory disclosures, this Court must impose sanctions unless such failures were harmless or substantially justified. *See Roberts, supra*. However, even assuming Plaintiff's disclosures did fail to meet the requirements of the Rule, the Court finds Plaintiff's arguments persuasive and that such failures were harmless.

The Sixth Circuit has recognized that the Rule "strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the

other party." *Roberts, supra, at 783*. In the instant case, Plaintiff and Defendants' initial disclosures were completed in the same manner. Plaintiff would have had little notice that their disclosures were not sufficient to Defendants. Further, Defendants' only included evidence in their motion of an attempt to notify opposing counsel after the discovery deadline had passed. The Court has already denied a motion by Defendants to extend discovery for these witnesses (Doc. # 158). Therefore, if Plaintiff's disclosure was inadequate, the circumstances of this case show that such a failure was harmless. Plaintiff has met her burden, and the witnesses will not be prohibited from testifying.

In regards to the testimony of Matthew Frick, Derrick Terrell, and Shane Stephenson, the court accepts Plaintiff's representations that each still has relevant testimony. These witnesses will be permitted to testify.

In regards to those listed in Defendants' motion under the heading "Plaintiff's Disclosure Regarding Other TASER Incidents" (Doc #. 163, at 6), Plaintiff has stated she does not intend to introduce said evidence. As such, the Court finds this argument moot.

In regards to the testimony of Sheriff Randy Thorpe, Defendants request Plaintiff "be prohibited from presenting testimony" for failure to disclose as an expert witness. Thorpe was disclosed as a witness with knowledge "about Tasers and related issues." Therefore, Thorpe may testify to matters within his knowledge and opinions consistent with Fed. R. Evid. 701. However, Thorpe may not testify as an expert on these matters.

The Court concludes that Plaintiff's witnesses should not be prohibited from testifying and therefore **DENIES** Defendants' Motion *in Limine* (Doc. # 163). Further, if Defendants wish to depose those witnesses for whom no subject-matter was disclosed, the Court will reopen discovery solely for that purpose. However, the trial date will not be moved.

### C. Testimony of Dr. Michael Lyman (Doc. # 164)

Defendants urge the court to prohibit Plaintiff's expert Dr. Lyman from testifying regarding use of force and TASERS, and from testifying regarding TASER markings. Defendants argue that Dr. Lyman has no knowledge, skill, experience, or education in the reasonableness of use of force regarding TASERs. Defendants further argue that he has neither been trained in nor used a TASER. Plaintiff argues that Dr. Lyman is qualified to testify as an expert in regard to use of force and TASERs.

Under *Daubert, supra*, in its role as gate-keeper, the court must determine (1) whether or not Dr. Lyman's testimony is reliable and (2) whether or not it is relevant. The second prong is easily disposed of. One of the key issues in this case is whether or not the use of force was excessive. Therefore, expert testimony concerning use of force is relevant.

In regard to reliability, Defendants claim that Dr. Lyman has "no education, training, experience, skill, or knowledge regarding the appropriateness of the use of force by means of a TASER device." Defendants' argument is unpersuasive. Dr. Lyman's qualifications show that he has knowledge in IACP guidelines, including the use of electronic weapons. The fact he has not used or been trained in the use of a TASER is not dispositive of his knowledge regarding use of force. Similarly, simply because he disagrees with case law does not disqualify him as an expert. The expert need not be correct, nor consistent with case law; he need only be reliable by a preponderance of the evidence.

Acting as gatekeeper, the Court finds that Dr. Lyman is qualified to testify. Defendants still have the ability to cross-examine Dr. Lyman, as well as rebut his testimony with their own expert. Further, since Plaintiff represents that Dr. Lyman will not be called to testify regarding TASER marking, Defendant's motion is moot in that regard.

The Court concludes that Dr. Lyman may testify regarding use of force in this case and therefore **DENIES** Defendants' Motion *in Limine* (Doc. # 164).

### D.  Testimony of Dr. Edward Pollyea (Doc. # 165)

Defendants argue that Plaintiff's expert Dr. Pollyea is not qualified to offer expert opinions regarding the effects of a TASER on the human body and the number of times a TASER device was used.  Plaintiff makes no arguments to support the qualifications of Dr. Pollyea.

Again, acting as gatekeeper, the court must determine whether or not the expert's testimony is reliable, and whether or not it is relevant.  Defendants note that Dr. Pollyea stated himself that he is not an expert in the effects of TASERs on the human body.  (Doc. # 165, at 4).  Nor could he determine the number of burns one TASER application would cause.  The Court believes that Dr. Pollyea would not provide reliable opinions in either of these areas of expertise, and should not testify in that regard.

Suggestive in Defendants' memorandum in support is the fact that Dr. Pollyea has knowledge regarding burns, the effects of pain on the human body, and other relevant medical information.  As his expertise in these regards is not challenged by the motion, the Court's ruling does not extend to those areas.  For example, assuming *arguendo* that Dr. Pollyea is qualified, he may testify to the number of burn marks that were present in his opinion, but not to the number of times a TASER was applied.   Similarly, assuming he is qualified, Dr. Pollyea may give his opinion regarding the amount of pain that could hypothetically have caused Plaintiff to "tense up" to the point of injury, but not the amount of pain Plaintiff experienced when the TASER was applied.

11

The Court concludes that Dr. Pollyea is not capable of rendering reliable opinions regarding the effects of a TASER on the human body nor regarding the number of times a TASER was applied. To the extent outlined in this opinion, the Court **GRANTS** Defendants' Motion *in Limine* (Doc. # 165).

### E. Suggestions of more than one TASER being used (Doc. # 166)

Defendants urge the Court to prohibit suggesting that a second TASER device was used. Plaintiff argues that the possibility of a second TASER being used exists, and is at least an issue of fact for the jury. Plaintiff has requested discovery of TASER read outs, which they claim are inconclusive. Plaintiff also asserts another TASER was available for use at the time in question. There is presently not enough evidence for this Court to conclude that the suggestion of more than one TASER would be clearly inadmissible. Plaintiff may pose such a theory, provided of course there is a good faith basis in the making of such an assertion. Therefore, the Court **DENIES** Defendants' Motion *in Limine* (Doc. # 166).

### F. Testimony of Plaintiff's Treating Physicians (Doc. # 167)

Defendants argue that Dr. George Moses and Ms. Mary Kay Willett should not be allowed to render expert testimony. Defendants argue that Plaintiff failed to disclose the physicians as experts and failed to provide expert reports. Defendants further argue that the physicians' testimony must be limited to their treatment of the Plaintiff, and that opinions as to causation fall outside of that scope. Defendants also argue that Dr. Moses should be prohibited from testifying regarding his observations and opinions of the Muskingum County Jail, and that such testimony would be irrelevant and prejudicial. Finally, Defendants argue that Ms. Willett should be prohibited from testifying regarding her opinions of the Defendants and any speculation about their treatment towards her and Plaintiff.

Plaintiff in turn argues that, as treating physicians, Moses and Willett were not required to furnish an expert report, and that each were properly disclosed under Rule 26(a)(2)(A). Plaintiff argues that Dr. Moses' observations and opinions concerning the jail are relevant to establish his credibility and qualifications as a witness. Finally, Plaintiff agrees to an order prohibiting Ms. Willet from testifying regarding her opinions of the Defendants.

Defendants' first argument requires the Court to determine whether or not Plaintiffs treating physicians can offer opinion testimony and offer testimony as to causation without first having been disclosed as expert witnesses and without having furnished an expert report. As noted in *Fielden, supra*, the Sixth Circuit has recognized that Rule 26 generally does not require treating physicians to provide an expert report in order to provide expert testimony. Further, treating physicians may offer opinions regarding causation rendered in the course of the patient's treatment.

Both sides have characterized Dr. Moses and Ms. Willett as treating physician, and no evidence has been put forward to contradict that characterization. As such, Dr. Moses and Ms. Willett were not required to furnish expert reports as contemplated by Rule 26. The Court also accepts Plaintiff's representations that the physicians were disclosed in accordance with Rule 26(a)(2)(A).

Further, the policy concerns outlined in *Fielden, supra*, do not require the Court to come to contrary conclusion. As stated, Plaintiffs do not argue that the opinions rendered by the physicians were not made in the ordinary course of treatment, only that opinions regarding causation would be outside that scope. So long as the physicians' testimonies are limited to those opinions formed during their treatment, their testimony may be rendered without an expert report. Further, allowing the physicians to testify would not be unfair or surprising to

13

Defendants. Defendants have deposed each physician, and will have opportunity to cross-examine them at trial. Defendants also have their own expert. One court has ruled that an expert report may be required when interpretation of a technical issue leaves room for debate. *Gonzalez v. Executive Airlines*, 236 F.R.D. 73, 81 (D.P.R. 2006). Again though, Defendants in the present case have had opportunity to depose each physician, and will be able to offer testimony from their own expert. The Court concludes that Plaintiff's treating physicians may offer opinion testimony, including testimony as to causation, formed within the scope of their treatment of Plaintiff, and that allowing them to do so is not in contravention of Rule 26.

Turning next to the observations and opinions of Dr. Moses, the court must determine whether such evidence would be clearly inadmissible. The Court finds Plaintiff's argument concerning the relevance of Dr. Moses' observations at the jail persuasive. Testimony of what Dr. Moses has observed at the Muskingum County Jail is relevant so long as such information was within his knowledge at the time he rendered treatment. However, the opinions of Dr. Moses regarding the jail would not be relevant, and would also be prejudicial. For example, Dr. Moses may testify that he has been to the jail and seen the restraint chair. However, he may not testify that he feels the jail cannot "police itself." Further, he should not testify as to his opinion that the restraint chair resembles an electric chair. As Plaintiff points out, the jury will see the chair and can come to that conclusion on its own if it so chooses. Dr. Moses' opinion as to what it looks like is not relevant, and would only prejudice the jury.

In conclusion, Plaintiff's treating physicians may testify as experts, and Dr. Moses may testify as to what observations he used in forming his opinions during treatment. Therefore, the Court **DENIES IN PART** Defendant's Motion *in Limine* (Doc. # 167). Further, since Dr. Moses may not testify as to his opinions regarding the jail, and both parties agree that Ms. Willett

should not testify regarding her opinions of the Defendants or their supposed actions directed towards her, the Court **GRANTS IN PART** Defendants' Motion *in Limine* (Doc. # 167).

### III. Conclusion

For the reasons discussed herein, the Court **GRANTS IN PART** Defendants' Motion *in Limine* (Doc. # 162), **DENIES** Defendants' *Motion in Limine* (Doc. # 163), **DENIES** Defendants' Motion *in Limine* (Doc. # 164), **GRANTS** Defendants' Motion *in Limine* (Doc. # 165), **DENIES** Defendants' Motion *in Limine* (Doc. # 166), and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion *in Limine* (Doc. # 167).

As with all *in limine* decisions, these decisions are subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trail motion and memoranda.

**IT IS SO ORDERED.**

                                               /s/ Gregory L. Frost
                                               GREGORY L. FROST
                                               UNITED STATES DISTRICT JUDGE